IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 7 |
| GARY L. PRICE and | * | |
| CINDY L. PRICE, | * | |
|     Debtors | * | |
| | * | |
| AMERICAN GENERAL CONSUMER | * | CASE NO. 1-05-bk-04401MDF |
| DISCOUNT COMPANY, | * | |
|     Plaintiff | * | |
| | * | |
| vs. | * | ADV. NO. 1-05-ap-00178 |
| | * | |
| GARY L. PRICE and | * | |
| CINDY L. PRICE, | * | |
|     Defendants | * | |

## OPINION

### Procedural and Factual History

In this adversary case, American General Consumer Discount Company ("American General") seeks a declaration of nondischargeability under 11 U.S.C. § 523(a)(2)(A). American General alleges that a loan it extended to Gary L. and Cindy L. Price ("Debtors") was obtained through false pretenses, a false representation, or actual fraud.

The facts that give rise to American General's complaint are as follows. On January 31, 2005, Debtors obtained an unsecured loan of $7,869.90 from American General. In applying for the loan, Debtors represented that they intended to use the loan proceeds to consolidate bills and to make home improvements. Approximately $4,800.00 of the loan proceeds was used to pay off credit card debt and the balance was received in cash. Debtors further represented that the market value of their home was more than $84,000.00 based on an appraisal that Debtors alleged was performed several years prior to 2005. Less than three months after they obtained the loan,

1

Debtors notified American General that they intended to file for bankruptcy. On July 5, 2005, approximately two months later, they filed their chapter 7 petition. From the time they obtained the loan in January 2005 until they filed for bankruptcy in July 2005, they made no payments on the loan.[1]

## Discussion

Unsecured, non-priority debts are dischargeable in a chapter 7 case unless they fall within certain exceptions described in 11 U.S.C. § 523. Exceptions to discharge are to be interpreted narrowly in favor of the debtor in order to promote bankruptcy's "fresh start" purposes. *Gleason v. Thaw,* 236 U.S. 558, 562 (1915); *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993). A party objecting to discharge under § 523(a) bears the burden of proving that the debt should be excepted from discharge. *Insurance Co. of American v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995). The objectant must meet this burden by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 288-89 (1991).

In pertinent part, § 523(a)(2)(A) provides that a discharge under § 727 does not discharge a debtor from a debt "for money . . . to the extent obtained by false pretenses, a false representation or actual fraud." In order for the Court to find a debt to be excepted from discharge under § 523(a)(2)(A), a creditor must prove the following common law elements of fraud: "(1) the debtor made the representations knowing they were false; (2) the debtor made the representations with the intent and purpose of deceiving the plaintiff; (3) the creditor justifiably

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is core pursuant to 28 U.S.C. § 157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

2

relied on the debtor's false representations; and (4) the creditor suffered a loss or damage as a proximate consequence of the representation having been made." *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (citing *Field v. Mans*, 516 U.S. 59, 61 (1995); *In re Ophaug*, 827 F.2d 340, 342 n. 1 (8th Cir. 1987); *In re Maurer*, 112 B.R. 710, 712-13 (Bankr. E.D. Pa. 1990)).[2]

American General alleges that Debtors impliedly misrepresented their financial ability to repay the loan as well as their intent to repay. In support of its claim, American General asserts that Debtors were in dire financial condition at the time they applied for the loan, but that they failed to disclose these facts in their application. American General also avers that Debtors greatly exaggerated the value of their real estate, that they made no payments on the loan, and that they took steps to file for bankruptcy only three months after obtaining the loan.

    *a.*    *ability to repay the loan*

American General alleges that Debtors misrepresented their ability to repay the loan by failing to disclose their true financial condition. Debtors testified that immediately prior to applying for the loan they had been paying their bills, albeit through some "juggling." Both sides agreed that Debtors applied for the personal loan in order to consolidate certain bills. American

---

[2]Other courts express the proof requirements in terms of the following six (6) elements. (1) that debtor made a false representation; (2) that debtor knew at the time the representation was made that it was false; (3) that the representation was made with intent to deceive the creditor; (4) that the creditor relied on the representation; (5) that the creditor sustained injury as a proximate result of the making of the representation; and (6) that debtor obtained, either directly or indirectly, property, services, or extension, renewal, or refinancing of credit. *In re Young,* 91 F.3d 1367, 1373 (10th Cir.1996); *In re Kroen,* 280 B.R. 347 (Bankr. D. N.J. 2002); *In re Verhelst,* 170 B.R. 657, 660 (Bankr. W.D. Ark. 1993); *In re Fritz,* 88 B.R. 434, 435 (Bankr. S.D. Fla. 1988). For purposes of the instant case, I find no material distinction between the test that employs four elements and the one that employs six.

3

General's witness testified that Debtors' monthly bills were reduced by $60.00 through consolidation of several smaller loans.

American General's assertion that Debtors concealed their true financial condition is contradicted by the testimony of its own witness who stated that he examined Debtors' credit report and found it to be "perfect." Further, even if Debtors had misrepresented their ability to repay the loan, this assertion would be irrelevant to a discharge challenge under §523(a)(2)(A). The focus of a dischargeability claim under § 523(a)(2)(A) is on whether a debtor has misrepresented his intention to repay a debt, not on whether he was forthright about his financial condition. *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir. 1996). Representations regarding a debtor's financial condition are actionable under § 523(a)(2)(B), but only if they are in writing. *Greater Pittsburgh Police Federal Credit Union v. Hilley (In re Hilley)*, 301 B.R. 819, 822 (Bankr. W.D. Pa. 2003), *aff'd*, 124 Fed. Appx. 81 (3d Cir. 2005). In the instant case, American General did not allege a cause of action under § 523(a)(2)(B), nor did it allege that Debtors made any written representations regarding their financial condition that proved to be false. Under these circumstances, American General has not stated a cause of action against Debtors simply because they failed to ensure that American General understood the full depth of their financial problems.

  *b. intent to repay the loan*

American General asserts that Debtors obtained the loan never intending to repay it. Although there is no direct evidence of this intent, American General argues that Debtors' failure to make any payments on the loan, their knowledge of their true financial condition at the time

4

the loan was made, and their failure to accurately report the value of their home on the loan application support a finding of fraud.

Debtors' failure to make any payments on the loan during the five months between the date they received the loan and the petition date constitutes some evidence that they did not intend to repay the loan. But for purposes of the fraud exception to discharge under § 523(a)(2)(A), in the absence of other supporting evidence, a debtor's failure to repay a loan is insufficient to prove that he did not intend to perform when the loan was made. *In re Murphy*, 190 B.R. 327, 333 (Bankr. N.D. Ill. 1995). Debtor Cindy Price testified that although Debtors were not paying all of their bills at the time they applied for the loan, they believed that the loan "was going to help us get ahead and get ourselves back on our feet, and it just didn't happen that way." (N.T. 13). In retrospect, it is clear that the consolidation loan from American General was inadequate to solve Debtors' financial problems, but there is no reason to believe that Debtors were better equipped to make that assessment than was American General. "A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting non-discharge." *In re Eashai*, 167 B.R. 181, 185 (BAP 9th Cir. 1994).

As additional evidence of fraudulent intent, American General adduced testimony that Debtors misrepresented the appraised value of their home when they applied for the loan. American General's witness testified that Debtors told him that their home was valued at $84,000.00, but that an appraisal performed immediately before they filed bankruptcy valued the

5

Case 1:05-ap-00178-MDF    Doc 14    Filed 06/19/08    Entered 06/19/08 15:44:01    Desc
Main Document    Page 5 of 8

mobile home and lot at only $28,000.00.³ Debtors testified that they told American General that the property had been appraised at $72,000.00 a number of years prior to the date of the loan application.⁴ Because the loan was unsecured, whether Debtors misstated the value of their residence on the loan application is of limited relevance. Debtors testified that they were shocked at the reduced value in the 2005 appraisal, and Debtor Gary Price testified credibly that deficiencies in the property not known at the time of the earlier appraisal had been identified.⁵ Although the value of the residence is significantly less than as represented by Debtors, I do not find that American General's reliance on these representations was justifiable. When asked whether he attempted to verify the value provided by Debtors, American General's witness stated "Absolutely not. I had nothing to do with that. It was not in reason to certainly try to do an appraisal, which is approximately $350.00, on technically a personal loan at their request." (N.T. 34). I find that Debtors' representation about the value of their property, while incorrect, was not an intentional misrepresentation, and American General did not justifiably rely on Debtors' opinion as to the property's value.⁶

---

³In their schedules the mobile home and lot was valued at $21,500.00 subject to a secured claim in the amount of $42,000.00.

⁴No written appraisal was introduced and no specific date was provided.

⁵Mr. Price testified that the 2005 appraisal revealed that the home is not connected to the municipal sewer system directly, but rather through a series of adjacent properties. He indicated that this and other factors contributed to the substantial difference between the prior appraised value and the 2005 value.

⁶"Reliance upon the misrepresentation need not be reasonable, but merely justifiable." *Field v. Mans*, 516 U.S. 59, 116 S. Ct 437, 133 L.Ed. 2d 351, 33 C.B.C.2d 1323 (1995).

Case 1:05-ap-00178-MDF    Doc 14    Filed 06/19/08    Entered 06/19/08 15:44:01    Desc
Main Document    Page 6 of 8

Debtors generally deny that they made any false representations whatsoever to American General. They specifically deny that when they obtained the loan they did not intend to repay it. At trial, American General adduced testimony from Debtors generally showing that they were financially strapped when they applied for the loan. American General argued that Debtors' inability to pay, as evidenced by their financial circumstances in January 2005, is evidence of a lack of intent to repay. This argument has not been favorably received in other courts.

> The issue is the Debtor's subjective intent to repay the debt. Debtors can honestly, but mistakenly, believe that they have the ability to repay their debts. Since the analysis is subjective, i.e. did the Debtor intend to repay . . . , the Court cannot require the Debtor to have an objectively reasonable basis for his belief: Care must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of dischargeability. Such a rule would unduly expand the "actual fraud" discharge exception by attenuating the intent requirement.

*In re Stewart*, 2001 WL 34076425, 4 (Bankr.C.D.Ill.) (citing *Karelin v. Bank of America Nat'l Trust and Savings Assoc.*, 109 B.R. 943, 948 (BAP 9th Cir. 1990)).

I do not find the circumstances of these Debtors to greatly differ from those of most debtors in the months prior to a bankruptcy filing. They were struggling to meet their financial obligations and searching for some way to simplify and reduce their monthly bills. When they were offered a loan to ease their financial burden they accepted it with a genuine conviction, however misplaced, that they could repay the obligation.

For these reasons, I conclude that American General failed to meet its burden of proving that it was induced to make the loan through Debtors' false pretenses, false representations, or

7

Case 1:05-ap-00178-MDF    Doc 14    Filed 06/19/08    Entered 06/19/08 15:44:01    Desc
Main Document      Page 7 of 8

actual fraud as provided in 11 U.S.C. § 523(a)(2)(A). Judgment will be granted in favor of Debtors, and American General's complaint will be dismissed. An appropriate order will be entered.

By the Court,

*/s/ Mary D. France*
Bankruptcy Judge

Date: June 19, 2008

*This document is electronically signed and filed on the same date.*

.

8

Case 1:05-ap-00178-MDF    Doc 14    Filed 06/19/08    Entered 06/19/08 15:44:01    Desc
Main Document    Page 8 of 8